1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADETTE R. TANGEN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No. 16-cv-01875 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>Re: Dkt. Nos. 13, 23 26 |

Plaintiff Bernadette Tangen seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits. Tangen argues her claim for benefits was wrongfully denied because the Administrative Law Judge gave too little weight to the opinions of treating medical sources, gave too much weight to the opinion of a medical expert, and found her lacking credibility. The Court finds the ALJ erred in giving too little weight to the opinion and findings of Tangen's treating neurologist and in giving too much weight to the opinion of the medical expert, but finds the ALJ did not err in her findings regarding Tangen's treating orthopedic surgeon or by finding Tangen not fully credible. Thus, the Court GRANTS in PART and DENIES in PART the cross-motions for summary judgment, and REMANDS for further proceedings consistent with this order.

## I.    BACKGROUND

Tangen applied for Social Security Disability Insurance benefits on August 7, 2012, alleging an onset date of August 17, 2011. AR 22. The claim was initially denied on

*United States District Court*
*Northern District of California*

1   February 5, 2013, and on reconsideration on July 10, 2013. *Id*. Tangen then requested a

2   hearing, which was held on June 11, 2014, before ALJ Regina L. Sleater. *Id*. At that

3   hearing, Tangen, medical expert Dr. Arthur Brovender, and vocational expert Ronald

4   Morrell testified. *Id*. The ALJ found Tangen not disabled. AR 19. Tangen

5   unsuccessfully appealed the ALJ's decision to the SSA's Appeals Council. AR 1.

6          In her analysis, the ALJ used a five-step evaluation process. AR 23. At step 1, the

7   ALJ found Tangen had not engaged in substantial gainful activity since the alleged onset

8   date. AR 24. At step 2, the ALJ found Tangen had the severe impairments of "cervical

9   and lumbar degenerative disc disease, status post cervical discectomy and fusion at C5-6;

10  and depressive disorder." *Id*. As relevant here, the ALJ reviewed the medical records and

11  opinions provided by Drs. Mark Howard and Dale Helman. AR 25.

12         Dr. Howard, Tangen's treating orthopedic spinal surgeon, diagnosed her with

13  cervical herniation from C5-C7, and referred her for spinal epidural injections. *Id*. The

14  ALJ found Dr. Howard did not assess functional limitations "other than a three-month

15  period of temporary disability between May and August 2012." *Id*. According to the ALJ,

16  Dr. Helman, Tangen's treating neurologist, "advised conservative care with physical

17  therapy" because of minimal findings. *Id*. In summarizing Tangen's medical records, the

18  ALJ found Tangen had complained to Dr. Helman of postoperative radiating neck and

19  back pain. *Id*. Dr. Helman conducted multiple electromyography studies of her upper and

20  lower extremities, but the most significant finding "was possible L5-S1 and C6-7

21  radioculopathy." AR 25-26. The ALJ criticized Dr. Helman's Summary Impairment

22  Questionnaire, AR 623-24, as lacking "any significant narrative discussion," and "assessed

23  extreme lifting and carrying limitations and manipulative limitations [for Tangen], which

24  he did not explain." AR 26. That Questionnaire limited Tangen to a restricted range of

25  sedentary work. *Id*. Furthermore, a March 2014 letter by Dr. Helman concluded Tangen

26  was disabled from any employment because of her spinal pain. *Id*. In a different form,

27  also completed in March 2014, Dr. Helman limited Tangen to a restricted range of

28  sedentary work. *Id*.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    At step 3, the ALJ found Tangen did not have an impairment or a combination of

2    impairments that met or equaled a listing.  AR 27.  The ALJ considered Listing 1.04,

3    Disorders of the Spine, but found Tangen did not meet the listing because she did not

4    "have the significant limitation of motion, neurological deficits, or inability to ambulate

5    effectively."  *Id*.  The ALJ found Tangen's depression did not meet or equal Listing 12.04,

6    Mental Disorders, because she did "not have multiple marked or extreme functional

7    limitations due to her mental disorder."  *Id*.

8    At step 4, the ALJ found Tangen had the residual functional capacity to perform

9    light work, "except she cannot lift or carry more than 20 pounds occasionally or 10 pounds

10   frequently.  She cannot sit, stand, or walk longer than 6 hours each in an 8-hour day."  AR

11   28.  In addition, the ALJ found Tangen "would be off pace about 10% of the time when

12   working on detailed tasks," and limited her "to occasional contact with the public and

13   coworkers and occasional changes in the work place or work tasks."  *Id*.

14   When considering a claimant's symptoms, ALJs must follow a two-step analysis.

15   *Id*.  First, the ALJ must determine if there is an "underlying medically determinable

16   physical or mental impairment(s) . . . that could reasonably be expected to produce the

17   claimant's pain or other symptoms."  AR 28-29.  If the first step is met, the ALJ next

18   evaluates "the intensity, persistence, and limiting effects of the claimant's symptoms to

19   determine the extent to which they limit the claimant's functioning."  AR 29.  ALJs must

20   decide on the claimant's credibility based on the entire record.  *Id*.  Though the ALJ found

21   Tangen's "medically determinable impairments could reasonably be expected to cause"

22   her symptoms, the ALJ also found Tangen's "statements concerning the intensity,

23   persistence and limiting effect of these symptoms are not entirely credible."  AR 31.  The

24   ALJ specifically found Tangen's credibility undermined by "the lack of physical and

25   mental health findings and the lack of significant ongoing treatment for pain or

26   depression."  AR 30.  In addition, the ALJ characterized Tangen's ongoing treatment as

27   conservative and intermittent.  *Id*.  Tangen's extensive daily activities of taking care of a 7-

28   year-old daughter, household chores, and engagement in various hobbies undermined her

United States District Court
Northern District of California

1    credibility.  *Id.*  Lastly, the ALJ found Dr. Howard "did not assess any functional

2    limitations other than a brief three-month temporary period of disability."  AR 29.  The

3    ALJ rejected the functional limitations assessed by Dr. Helman.  AR 30.  The ALJ did,

4    however, accept the opinion of testifying medical expert Dr. Brovender.  AR 29-30.  Dr.

5    Brovender found Tangen had "recovered well from surgery," "postoperative examinations

6    were essentially normal," and that she could perform light work.  AR 29.  Lastly, the ALJ

7    found Tangen able to perform her past relevant work.  AR 31.

8         Tangen filed this case on April 11, 2016, and filed a motion for summary judgment

9    on September 9, 2016.[1]  Dkt. No. 13.  Colvin opposes this motion and filed a cross-motion

10   for summary judgment.  Dkt. No. 26.  Both parties consented to the jurisdiction of a

11   magistrate judge.  Dkt. Nos. 5, 6.

12   **II.   LEGAL STANDARD**

13        A district court has the "power to enter, upon the pleadings and transcript of the

14   record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

15   Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).

16        The decision of the Commissioner should only be disturbed if it is not supported by

17   substantial evidence or if it is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679

18   (9th Cir. 2005).  Substantial evidence is evidence that a reasonable mind would accept as

19   adequate to support the conclusion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

20   2005) ("[It] is more than a mere scintilla but less than a preponderance.").  Where evidence

21   is susceptible to more than one rational interpretation, the ALJ's decision should be

22   upheld.  *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995).

23   **III.  DISCUSSION**

24        Tangen challenges the denial of benefits on two grounds.  First, Tangen argues the

25   _____

26   [1] Tangen's counsel failed to attach the Memorandum in Support of Summary Judgment to
     the Notice of Motion for Summary Judgment or Remand.  Dkt. No. 13.  The Court

27   informed counsel of this failure on December 19, 2016, and counsel attached the
     Memorandum on December 20, 2016.  Dkt. No. 23-1.  The Court will refer to docket 23-1

28   as Tangen's motion.  The Court will also cite to Colvin's cross-motion for summary
     judgment at docket 26, filed in response to Tangen's later-filed Memorandum.

1   ALJ erred in rejecting the medical opinions and findings of Drs. Helman and Howard, and

2   in accepting the opinion of Dr. Brovender.  Second, Tangen argues the ALJ erred in

3   finding her testimony lacking credibility.

**A.    The ALJ Improperly Discredited the Opinion and Findings of Dr. Helman, Properly Disregarded Purported Limitations Provided by Dr. Howard, and Improperly Gave Too Much Weight to the Testimony of Dr. Brovender.**

6        In social security disability cases, "[t]he ALJ must consider all medical opinion

7   evidence." *Tommasetti*, 533 F.3d at 1041.  Generally, more weight is given to the opinion

8   of a treating physician than to that of a non-examining physician.  *Lester v. Chater*, 81

9   F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).  Where a treating physician's

10  opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

11  techniques and is not inconsistent with the other substantial evidence" in the record, it

12  must be given "controlling weight."  20 C.F.R. § 404.1527(c)(2).

13       The Commissioner must provide "clear and convincing" reasons for rejecting the

14  un-contradicted opinion of treating and examining physicians.  *Lester*, 81 F.3d at 830.

15  Where contradicted, the opinions of treating and examining physicians may only be

16  rejected for "specific and legitimate reasons that are supported by substantial evidence in

17  the record."  *Id.* at 830-31.  A non-examining physician's opinion "cannot by itself

18  constitute substantial evidence that justifies the rejection of the opinion of an examining or

19  treating physician."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.

20  1999).  However, a non-examining physician's opinion may constitute substantial evidence

21  if the opinion is "consistent with independent clinical findings or other evidence in the

22  record."  *Thomas*, 278 F.3d at 957.  An ALJ may in part rely on non-examining

23  physicians' statements to the extent independent evidence in the record supports those

24  statements. *Morgan*, 169 F.3d at 602.

**1.    The ALJ Erred in Giving Too Little Weight to Dr. Helman's Medical Opinion and Findings.**

27       Tangen challenges the ALJ's finding that Dr. Helman's assessments were not

28  supported by his own treatment notes and the weight of the medical evidence.  Dkt. No.

United States District Court
Northern District of California

23-1 at 4; *see also* AR 29.  The Court agrees with Tangen. The Court does note, however, that the medical records in this case were confusingly presented, often with duplicates. However, the relevant records were present and required analysis.

Though the Court agrees that the most significant finding on an EMG *specifically* was "possible L5-S1 and C6-7 radiculopathy," the Court does not agree that this was Dr. Helman's most significant finding as Tangen's physician.  AR 25-26.  As Tangen pointed out, Dr. Helman's examinations turned up repeated physical findings. Dkt. No. 23-1 at 4. For example, in February 2012, Dr. Helman's physical examination showed "diminished touch in a stocking distribution to the knee on both sides."  AR 503; *see also* AR 519, 527) (March and May 2012 visits showed diminished touch in the L3, L4, and L5 distribution, and L4, L5, and S1 distribution, respectively, in addition to pain).  Later doctor's visits in 2013 continued to find diminished touch, but also cervical and lumbar spine spasms, as well as back and neck pain.  *See e.g.*, AR 626-27 ("My concern of course is that she may have entrapment neuropathy that might require surgery or worsening nerve impingement of the spine."), 628-29, 630-31 ("She has much more severe spasms throughout her spine, although, she is doing her home therapy program. . . .  It is my impression she is worse. She has evidence of possible mononeuropathies or polyneuropathies as well as nerve impingement syndrome"), 632-33.  The Court notes the ALJ stated additional reasons for disbelieving the Dr. Helman's opinions, such as that the doctor's letters and forms did not include "any significant narrative discussion," or explain his reasoning.  AR 26.  These are not grounds for disbelieving Dr. Helman when in those forms he refers to EMG findings, and his treatment notes were available in the medical record.  *See e.g.*, AR 623, 877.

As a result, the ALJ's finding that Dr. Helman "consistently reported a lack of physical findings despite taking repeated electrodiagnostic studies," is not supported by substantial evidence, and frankly, glosses over the medical record, which included treatment notes in the form of cover letters that repeatedly reported her condition was deteriorating.  This was not harmless error, even where the ALJ found medical expert, Dr. Brovender's testimony contradicted Dr. Helman's findings.  *Lester*, 81 F.3d at 830-31.

Case No. 16-cv-01875 NC                    6

Because Dr. Helman was a treating source, the ALJ needed to provide "specific and legitimate reasons" supported by substantial evidence in the medical record.[2] *Id*. The Court finds such reasons lacking in the opinion.

### 2. The ALJ Properly Disregarded Purported Limitations Provided by Dr. Howard.

Tangen argues the ALJ improperly rejected the physical function assessments of Dr. Howard. Dkt. No. 23-1 at 7. The dispute here regarding Dr. Howard's opinion revolves around a 2012 temporary disability statement, AR 462, and his December 7, 2012, statement in a treatment note that "[b]ecause of persistent spinal pain complaints . . . [, Tangen] has a relative sitting intolerance and on that basis, she is currently not able to work in her regular capacity." AR 963. In the ALJ's decision, she stated that "Dr. Howard did not assess any functional limitations other than a single-three month period of temporary disability between May and August 2012." AR 25. The Court finds the ALJ did not err in not including Dr. Howard's vague finding as a functional limitation. Neither the Court nor the ALJ has the duty to attempt to decipher what a "relative sitting intolerance" is, or what it meant for Tangen to work "in her regular capacity" if it is not more fully explained as a limitation. AR 963.

### 3. The ALJ Gave Too Much Weight to Dr. Brovender's Testimony.

Tangen argues the ALJ improperly gave Dr. Brovender's testimony too much weight because he made "materially inaccurate restatements" of the medical record. Dkt. No. 23-1 at 8. As noted above, a non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602. Yet a non-examining physician's opinion may constitute substantial evidence if the opinion is "consistent with independent clinical

---

[2] The Court notes Tangen advanced an additional reason to reverse the ALJ's decision, that Dr. Helman had not only advised "conservative care." Dkt. No. 23-1 at 5 (citing AR 29). There is merit to this point, where Dr. Helman noted Tangen might need surgery in the future and that her condition was worsening. *See e.g.*, AR 626-27. However, because the Court already found that the ALJ did not consider all of Dr. Helman's findings in this section, the Court does not rely on this point as a reason for reversal.

findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Here, the ALJ's stated reasons for rejecting Dr. Helman's opinion did not trace back to Dr. Brovender. Rather, she rejected Dr. Helman's opinions because she found them poorly supported. *See* AR 26, 30. Based on her reading of the medical record, the ALJ considered Dr. Brovender's medical opinion to be the most consistent with the record. *Morgan*, 169 F.3d at 602. The Court has already indicated why such a reading was incorrect with respect to the analysis of Dr. Helman's medical records. *See Thomas*, 278 F.3d at 957. However, the Court also points out that the ALJ's finding, based on Dr. Brovender's testimony, that Tangen "recovered well from surgery," and that "postoperative examinations were essentially normal," ignores Dr. Howard's later findings regarding her recovery. AR 29; *see* AR 963, 966, 968, 970-71 (discussing Tangen's pain symptoms and the lack of consensus regarding whether her bones fused). Thus, the ALJ erred in relying on Dr. Brovender's opinion because it was inconsistent with "other evidence in the record," *Thomas*, 278 F.3d at 957, which made the ALJ's conclusion regarding Tangen's medical condition unsupported by substantial evidence.

### B.    The ALJ Properly Found Tangen Lacking Credibility.

Tangen argues the ALJ improperly found her not fully credible. Dkt. No. 23-1 at 9. Colvin argues the ALJ properly found her testimony lacking credibility. Dkt. No. 26 at 10.

An ALJ must use a two-step analysis to determine a claimant's credibility as to subjective pain or symptoms. *Garrison*, 759 F.3d at 1014. An ALJ first decides if the claimant presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations omitted). If the claimant meets the first test, and the ALJ finds no malingering, the claimant's testimony regarding the severity of symptoms may only be rejected for "specific, clear and convincing reasons." *Id*. Where a credibility determination is a "critical factor" in the ALJ's decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief." *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). If a

Case No. 16-cv-01875 NC              8

reviewing court agrees that the ALJ's finding is so supported, it must be given great weight. *Id.* "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found Tangen not fully credible because (1) her treatment had been intermittent and conservative; (2) Tangen's activities of daily living were "extensive"; and (3) her pain improved postoperatively.  AR 30; *see also* Dkt. No. 23-1 at 9-12.  Based on the Court's analysis of the medical record, above, the first and third grounds are tenuous grounds for finding Tangen lacking credibility.  However, the Court finds the ALJ did not err in not finding Tangen fully credible because of her extensive activities in taking care of her family and home, as well as her hobbies.  AR 30.  The Court finds that the ALJ's conclusion that Tangen's combined level of activity was not consistent with her allegations of disability is sufficiently specific, and supported by substantial evidence.  *Light*, 119 F.3d at 792; *Rashad*, 903 F.2d at 1231.

## IV.  CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the cross-motions for summary judgment, and REMANDS for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated:  February 23, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California